# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| Gabriel Rench; Sean Bohnet; and Rachel Bohnet, <br><br>        **Plaintiffs,** <br> vs. <br><br> City of Moscow, a political subdivision of the State of Idaho; City Supervisor Gary Riedner, individually and in his official capacity; Mia Bautista, Moscow City Attorney, individually and in her official capacity;  Elizabeth Warner, Moscow City Attorney, individually and in her official capacity; James Fry, Moscow, Idaho Chief of Police, individually and in his official capacity; Will Krasselt, Moscow, Idaho police officer, individually and in his official capacity; Carlee Brown, Moscow, Idaho police officer, individually and in his official capacity; and Jake Lee, Moscow, Idaho police officer, individually and in his official capacity, <br><br>        **Defendants.** | Case No. _____ <br><br><br><br> **Complaint** <br><br> **Jury Demanded** |

The Plaintiffs Gabriel Rench, Sean Bohnet, and Rachel Bohnet for their Complaint make the following allegations:

## Introduction

City of Moscow, Idaho law enforcement officers arrested Plaintiffs Gabriel Rench, Sean Bohnet, and Rachel Bohnet during a religious assembly to peacefully protest certain City restrictions imposed regarding a public health emergency order.  The Plaintiffs failed to wear masks during a protest against the order requiring the wearing of masks and to socially

distance.  Law enforcement officers, despite knowing the underlying ordinance made exceptions for core political speech activities and knowing federal and state law protected core political speech activities, arrested and charged Rench and the Bohnets under the governing City health emergency order for not following the order's mask wearing and social distancing requirements. The Bohnets were also charged with refusing to identify themselves. Just before their continuing prosecution went to trial, the City dismissed the charges, but not before Rench and the Bohnets incurred some jail time, attorney fees, and costs.

Meanwhile, the City amended the ordinance governing public health emergencies and deleted exceptions of the initial ordinance that had previously protected core political speech activities.  Despite the amended health emergency ordinance, Rench and the Bohnets intend to continue their peaceful protests of the City's restrictions and to continue to assemble to exercise their religious beliefs.

This lawsuit is a civil rights and declaratory judgment action. The City of Moscow violated the First Amendment rights of Rench and the Bohnets. Law enforcement officers' reckless indifference to the rights of Rench and the Bohnets resulted in their arrest and detainment. And, with the City's amendment to the initial ordinance excluding protected core political activities, the ordinance is now violative of the First Amendment and should be declared unconstitutional.

In addition, the statute under which the Bohnets were charged for failing to identify themselves while engaged in protected core political speech activities, Idaho Code § 18-705, is unconstitutional under the Fourth Amendment because the Bohnets were not engaged in

or suspected of committing a crime, and unconstitutional under the First Amendment for governmental compelled speech. During a religious activity and protest, as protected First Amendment activities, the government cannot compel a person to identify themselves to a police officer, compromising their anonymity, when not engaged in criminal behavior.

Rench and the Bohnets seek no less than nominal damages for the violation of their constitutional rights and punitive damages for the reckless indifference to their protected core political and religious rights. Furthermore, injunctive relief is appropriate to curtail the reach of the amended ordinance so as not to prevent core political and religious activities.

## Jurisdiction and Venue

1.      This Court has s jurisdiction under 28 U.S.C. § 1331 (federal-question jurisdiction), 28 U.S.C. § 2201 (declaratory-judgment jurisdiction), and 42 USC §§ 1983, 1988 (civil-rights statutes).

2.      Venue is proper in this Court under 28 U.S.C. § 1391 because the defendant City of Moscow, Idaho, is a municipality and is a political subdivision of the State of Idaho within this district, and because the events or omissions giving rise to the claims presented occurred within this district.

## Parties

### A.  The Plaintiffs

3.      Plaintiff Gabriel Rench is a resident of Moscow, Idaho. He protested by not wearing a mask against an emergency health order, issued by the Mayor of Moscow, that required the wearing of masks. Moscow law enforcement officers arrested Rench and detained him. The previous arrest will not deter Rench from protesting again, and he intends

to protest again against the emergency health order by not wearing a mask.  He is fearful of being arrested, detained, and being prosecuted, causing him his loss of freedom and moneys for attorneys, costs, or fines or other penalties because of the City's health emergency ordinance.

4.      Plaintiff Sean Bohnet is a resident of Moscow, Idaho. He protested by not wearing a mask against an emergency health order, issued by the Mayor of Moscow, that required the wearing of masks. Moscow law enforcement officers arrested Bohnet and detained him. The previous arrest will not deter Bohnet from protesting again, and he intends to protest again against the emergency health order by not wearing a mask.  He is fearful of being arrested, detained, and being prosecuted, causing him his loss of freedom and moneys for attorneys, costs, or fines or other penalties because of the City's health emergency ordinance.

5.      Plaintiff Rachel Bohnet is a resident of Moscow, Idaho. She protested by not wearing a mask against an emergency health order, issued by the Mayor of Moscow, that required the wearing of masks. Moscow law enforcement officers arrested Bohnet and detained her.  The previous arrest will not deter her from protesting again, and she intends to protest again against the emergency health order by not wearing a mask.  She is fearful of being arrested, detained, and being prosecuted, causing her loss of freedom and moneys for attorneys, costs, or fines or other penalties because of the City's health emergency ordinance.

**B.      The Defendants**

6.      The Defendant City of Moscow is a political subdivision in the State of Idaho. Moscow employs law enforcement officers to enforce the law including the City's

ordinances, in which, those officers are aware of the scope of their authority. They are also knowledgeable of the First Amendment rights afforded to and protectable to Moscow residents.

7.      The Defendant City Supervisor Gary Riedner is an administrative official of the City of Moscow. He is being sued individually and in his official capacity. As City Supervisor, Riedner has personal knowledge of the laws of the City and of the State regarding the protection of core political activities.  Notably, Riedner has personal knowledge of City ordinances, specifically, Chapter 11 governing emergency powers of the Mayor's executive office for emergency situations. He is also familiar with the exemptions of City Code § 1-11-07 governing all expressive and associative activity, that unless specifically prohibited in an issued Public Health Emergency Order, expressive and associative activities were not subject to the Order at the time of the arrests of Plaintiffs Rench and the Bohnets.

8.      The Defendant Mia Bautista is the City Attorney for the City of Moscow. She is being sued individually and in her official capacity. As City Attorney, Bautista has personal knowledge of the laws of the City and of the State regarding the protection of core political activities.  Notably, Bautista has personal knowledge of City ordinances, specifically, Chapter 11 governing emergency powers of the executive office for emergency situations. As City Attorney, Bautista knew that under Section 1-11-07 of the Moscow City Code, the provision listed the expressive and associative activities as *excluded* from any public health emergency order:

> *Unless otherwise specifically prohibited* by a Public Health Emergency Order duly enacted by the Mayor, the following activities shall be exempt from the scope of such order:

1. *Any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.* (Emphasis added).

9.     Bautista knew the exemptions of City Code § 1-11-07 governing all expressive and associative activity, that unless specifically prohibited in an issued Public Health Emergency Order, expressive and associative activities were not subject to the Order in effect at the time of the arrests of Plaintiffs Rench and the Bohnets.

10.     The Defendant James Fry is the Chief of Police for the City of Moscow, Idaho. He is being sued individually and in his official capacity as the chief law enforcement officer with the City of Moscow. As a law enforcement officer, he has personal knowledge of the laws he is to enforce and the rights of the citizens he arrests. For instance, in March of 2020, Chief Fry knew the Moscow Mayor issued a health emergency order under his emergency powers under the City Code. Chief Fry also knew that Moscow citizens have protectable rights under the First Amendment, including the right to assemble, the right to protest, and the right to exercise their religious beliefs among other protectable rights under the U.S. Constitution, the Idaho Constitution, and the laws of the State of Idaho. Specifically, Chief Fry knew that under Section 1-11-07 of the Moscow City Code, the provision listed the expressive and associative activities as *excluded* from any public health emergency order:

*Unless otherwise specifically prohibited* by a Public Health Emergency Order duly enacted by the Mayor, the following activities shall be exempt from the scope of such order:

1. *Any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.* (Emphasis added).

11.     The Defendant Will Kasselt is a law enforcement officer with the Moscow, Idaho Police Department. He is being sued individually and in his official capacity as a law enforcement officer with the City of Moscow. As a law enforcement officer, he has personal knowledge of the laws he is to enforce and the rights of the citizens he arrests. For instance, in March of 2020, Officer Kasselt, knew the Moscow Mayor issued a health emergency order under his emergency powers under the City Code. Officer Kasselt also knew that Moscow citizens have protectable rights under the First Amendment, including the right to assemble, the right to protest, and the right to exercise their religious beliefs among other protectable rights under the U.S. Constitution, the Idaho Constitution, and the laws of the State of Idaho. Specifically, Kasselt knew that under Section 1-11-07 of the Moscow City Code, the provision listed the expressive and associative activities as *excluded* from any public health emergency order:

> *Unless otherwise specifically prohibited* by a Public Health Emergency Order duly enacted by the Mayor, the following activities shall be exempt from the scope of such order:
>
> 1. *Any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.* (Emphasis added).

12.     The Defendant Jake Lee is a law enforcement officer with the City of Moscow, Idaho Police Department. As a law enforcement officer, he has personal knowledge of the laws he is to enforce and the rights of the citizens he arrests. For instance, in March of 2020, Officer Lee, knew the Moscow Mayor issued a health emergency order under his emergency powers under the City Code. Officer Lee also knew that Moscow citizens have protectable rights under the First Amendment, including the right to assemble, the right to protest, and the right to exercise their religious beliefs among other protectable

rights under the U.S. Constitution, the Idaho Constitution, and the laws of the State of Idaho. Specifically, Lee knew that under Section 1-11-07 of the Moscow City Code, the provision listed the expressive and associative activities as *excluded* from any public health emergency order:

> *Unless otherwise specifically prohibited* by a Public Health Emergency Order duly enacted by the Mayor, the following activities shall be exempt from the scope of such order:
>
> > 1. *Any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.* (Emphasis added).

13.     The Defendant Carlee Brown is a law enforcement officer with the City of Moscow, Idaho Police Department. As a law enforcement officer, he has personal knowledge of the laws he is to enforce and the rights of the citizens he arrests. For instance, in March of 2020, Officer Brown, knew the Moscow Mayor issued a health emergency order under his emergency powers under the City Code. Officer Brown also knew that Moscow citizens have protectable rights under the First Amendment, including the right to assemble, the right to protest, and the right to exercise their religious beliefs among other protectable rights under the U.S. Constitution, the Idaho Constitution, and the laws of the State of Idaho. Specifically, Brown knew that under Section 1-11-07 of the Moscow City Code, the provision listed the expressive and associative activities as *excluded* from any public health emergency order:

> *Unless otherwise specifically prohibited* by a Public Health Emergency Order duly enacted by the Mayor, the following activities shall be exempt from the scope of such order:
>
> > 1. *Any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.* (Emphasis added).

14.    The Defendant Elizabeth Warner is the prosecuting attorney for the City of Moscow, Idaho. As the prosecuting attorney, Warner is responsible for preliminary investigations to establish probable cause and to pursue criminal prosecutions. As City Attorney, Warner knew the Moscow Mayor issued a health emergency order under his emergency powers under the City Code. Warner also knew that the governing Emergency Health Ordinance explicitly announced exceptions regarding First Amendment protectable rights and of Idaho Statutes § 73-402 expressly preserving the free exercise of religion. Warner also knew that Moscow citizens have protectable rights under the First Amendment, including the right to assemble, the right to protest, and the right to exercise their religious beliefs among other protectable rights under the U.S. Constitution, the Idaho Constitution, and the laws of the State of Idaho. Specifically, Warner knew that under Section 1-11-07 of the Moscow City Code, the provision listed the expressive and associative activities as *excluded* from any public health emergency order:

> *Unless otherwise specifically prohibited* by a Public Health Emergency Order duly enacted by the Mayor, the following activities shall be exempt from the scope of such order:
>
> 1. *Any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.* (Emphasis added).

15.    Warner knew the exemptions of City Code § 1-11-07 governing all expressive and associative activity, that unless specifically prohibited in an issued Public Health Emergency Order, expressive and associative activities were not subject to the Order in effect at the time of the arrests of Plaintiffs Rench and the Bohnets.

**Standing**

16.     An actual controversy exists between the parties, and the Plaintiffs Gabriel

Rench, Sean Bohnet, and Rachel Bohnet, have suffered an injury-in-fact which is directly

traceable to the Defendants City of Moscow, Gary Riedner, Mia Bautista, Elizabeth Warner,

Chief James Fry, Police Officer Will Krasselt, Police Officer Carlee Brown, and Police

Officer Jake Lee, individually or in concert with each other.

17.     While engaging in First Amendment activities, Rench and the Bohnets were

arrested, jailed, and prosecuted for allegedly violating an emergency health order issued by

the Moscow Mayor under Chapter 11 of the City Code. The Order required social distancing

and mask wearing; however, the Ordinance under which the emergency health order was

issued made exceptions for protected First Amendment activities.

18.     Rench and the Bohnets suffered damages from violations of their respective

protectable rights under the First Amendment when arrested by law enforcement officers

who knew core political speech activities and the exercise of religious beliefs were exempt

from prosecution under the Moscow City Code.

19.     The Bohnets suffered damages when they were arrested under § 18-705,

because the statute is unconstitutional when people are engaged in core political activities

and exercising their religious beliefs as protected under the First and Fourteenth

Amendments unless reasonable suspicion of a crime or probable cause for a crime exists.

**Factual Background**

20.     On March 13, 2020, the Mayor of the City of Moscow, Bill Lambert, issued a

Local Emergency Proclamation declaring a local disaster emergency due to the occurrence

and imminent threat to public health and safety arising from the effects of the 2019 coronavirus (COVID-19). This action was taken pursuant to Idaho Code § 46-1011.

21.     The Moscow City Council, seven days after the issuance of the Mayor's declaration of a local disaster emergency, adopted Ordinance No. 2020-03, that provided for a new chapter to Moscow's City Code entitled "Emergency Powers." Moscow, Idaho, Ordinance No. 2020-03 (Mar. 20, 2020).

22.     Chapter 11, codified and provided for the Mayor of Moscow with emergency powers to respond to "emergency situations," providing the procedures for "activating the emergency powers of the Mayor and the specific powers of the Mayor during a public health emergency." Moscow, Idaho, Code § 1-11-03 (2020). Under § 1-11-05, the Mayor is authorized to issue advisory orders, social distancing orders, or isolation orders. Moscow, Idaho, Code § 1-11-05 A., B., C. (2020). "When summarily enacting a Public Health Emergency Order, the Mayor shall prepare a written order and publish it" as prescribed under § 1-11-06 C. Moscow, Idaho, Code § 1-11-06 A., C. (2020).

23.     An issued Public Health Emergency Order becomes effective immediately upon publication and shall not be continued or renewed for a period in excess of seven days except by or with the consent of the Moscow City Council through a resolution. § 1-11-06 C. Moscow, Idaho, Code § 1-11-06 B. (2020). Section 1-11-07 listed the activities *excluded* from any public health emergency order: *Unless otherwise specifically prohibited* by a Public Health Emergency Order duly enacted by the Mayor, the following activities shall be exempt from the scope of such order:

1. *Any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.* (Emphasis added).

2. Educational institutions and airports, which shall follow the duly adopted policies of their respective governing bodies.

3. Activities necessary to operate critical infrastructure and services.

4. Activities necessary to operate and use medical facilities and services.

5. Activities necessary to buy, sell, or otherwise deliver food or necessities purchased in or at grocery or convenience stores, gas stations, and pharmacies.

Emphasis added.

24.     Section 1-11-10 also prescribes the penalty for violating "any provision or directive of a duly enacted social distancing order, isolation order, or quarantine order while such order is in effect." Any violation of any order is a misdemeanor. Moscow, Idaho, Code § 1-11-10 (2020).

25.     The Moscow Mayor issued an Amended Public Health Emergency Order on July 1, 2020, effective on July 2, 2020.

26.     The Moscow City Council, by resolution, consented to the July 1, 2020, Public Health Emergency Order through a resolution dated July 6, 2020, extending the effect of the Order to August 4, 2020.

27.     The Moscow City Council then extended the July 1, 2020 Public Health Emergency Order from August 4, 2020, to October 6, 2020.

28.     Moscow officials, such as the Mayor, Chief of Police, Police Department officers, and the City Attorneys have knowledge of the city ordinances for which they are entrusted to enforce or uphold.

29.     The Moscow Chief of Police, Police Department officers, and the City Attorneys are also aware of and have knowledge of state laws that affect the rights of citizens and other laws they are entrusted to enforce or uphold.

30.     The Moscow Chief of Police, Police Department officers, and the City Attorneys are also aware of and have knowledge of rights embodied within the U.S. Constitution and the Idaho Constitution that affect the rights of citizens and other laws they are entrusted to enforce or uphold.

31.     On July 1, 2020, the Mayor issued Amended Public Health Emergency Order 20-03. The order states:

> 1.  Every person in the city of Moscow must wear a face covering that covers their nose and mouth when in any indoor or outdoor public setting where the 6-foot physical distancing is not able to be maintained with non-household members, except as follows…[exceptions listed]
>
> 2.  Every Person in the city of Moscow, when in places that are open to the public, shall maintain 6-foot physical distancing from a non-household member, whenever possible.

32.     The July order did not specifically prohibit wearing a mask or social distancing at "[a]ny and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity," (nor any other exclusion) as required under Moscow, Idaho, Code § 1-11-07 (2020).

33.     Meanwhile, Christ Church in Moscow, Idaho organized a religious assembly to sing praise to their God in a "Psalm Sing" in front of the Moscow City Hall to protest the mask mandate in the Amended Public Health Emergency Order on Wednesday, September 23, 2020.

34.     The September 23, 2020 religious assembly and protest was not the first of its kind since the issuance of the Mayor's Emergency Order. Christ Church had organized similar events such as what had occurred in Moscow's downtown Friendship Square.

35.     Notably, the September 23, 2020 religious assembly and protest occurred after two to three hours of public testimony was given before the Moscow City Council on September 21, 2020, against the Council's intended vote to affirm the extension of the Mayor's Emergency Order.

36.     Moscow Mayor Bill Lambert and Moscow City Attorney Mia Bautista received a complaint from a citizen about the religious assembly at City Hall to protest mask wearing. The complaint noted the pastor of Christ Church, Douglas Wilson, requested attendees to not wear masks.

37.     Police Chief James Fry informed his officers in the morning of September 23, 2020 of the "Anti-Mask" gathering planned at the Moscow City Hall and the scheduled time of the protest at 4:45 p.m.

38.     Police Chief James Fry, Captain Tyson Berret, Officer Will Krasselt, City Attorney Mia Bautista, and City Supervisor Gary Riedner met to discuss the assembly and protest. Officer Krasselt had previously searched Facebook events for Moscow and confirmed the assembly and protest would take place.

39.     During the meeting, it was agreed that the City Hall parking lot would be made available for the protest and city staff would paint markings in the lot for social distancing purposes.

40.     At the time of the meeting all participants knew that Chapter 11 of the City Code governed emergency powers of the Mayor's executive office for emergency situations. They also knew of the exemptions of City Code § 1-11-07 governing all expressive and associative activity, that unless specifically prohibited in an issued Public Health Emergency Order, were not subject to the Order. Yet, knowing the purpose of the religious assembly to protest the executive order issued by Mayor Lambert, they painted circles on the parking lot where the assembly was to occur on the pretext for social distancing.

41.     Chief Fry, despite knowing the laws of the State of Idaho, the rights of citizens under U.S. Constitution, and City Ordinances, specifically the ordinance governing Public Health Emergency orders allowing for such core political activities, nevertheless instructed his officers to cite individuals as they saw fit to cite who did not wear a mask or socially distance while attending the religious assembly and protest.

42.     Chief Fry, despite knowing the laws of the State of Idaho, the rights of citizens under U.S. Constitution, and City Ordinances, specifically the ordinance governing Public Health Emergency orders allowing for such core political activities, did not discourage the citation of citizens attending the religious assembly and protest who did not wear a mask or socially distance.

43.     The religious assembly and protest eventually included over 200 people. "Psalm Sing ends without incident." Dennis, Ellen. Moscow-Pullman Daily News. 10.8.21. https://dnews.com/coronavirus/psalm-sing-ends-without-incident/article_11608f00-412f-5c6d-accd-fc85821e760f.html. Accessed 2.15.21.

44.     Moscow Police Officer Krasselt had determined as people arrived at the religious assembly and protest that they would not be wearing a mask or social distancing.

45.     Krasselt, standing in the parking lot, recognized Rench from an April, 2020 protest and City Council meeting and engaged Rench about the two people standing with him.

46.     Krasselt discovered Rench was with his mother. The other person was a non-family member and told them to come with him so he could issue a citation for not social distancing.  Rench refused to show his identification for the citation and as a result was arrested.

47.     Plaintiffs Sean and Rachel Bohnet were also arrested at the same rally.

48.     The religious assembly and protest had already begun. Moscow Police Officer Brown approached a group of five people attending the protest. Brown spoke to Sean and Rachel Bohnet asking them if they were family members to which they replied that they were married. During this exchange, Brown had difficulty hearing the Bohnets responding to his questions because of the loud singing of psalms by those who gathered at the religious assembly and protest.

49.     Brown then instructed the Bohnets to remove themselves from the other three people. Brown told Sean Bohnet that the social distancing was "required by city code." Sean Bohnet "respectfully disagree[d]."

50.     Brown would ask Sean and Rachel Bohnet for their identification and to socially distance. Rachel complied and Brown accepted it. Sean did not comply with the request. Rachel requested her identification back and the officer complied.

16

51.     Brown would then arrest the Bohnets for resisting and obstructing an officer under Idaho Code § 18-705 and for violating the amended city order for failing to wear a mask and for failing to social distance, citing M657-1-11-10.

52.     After his arrest, Plaintiff Gabriel Rench hired legal counsel, expending approximately $5,000 in attorney fees and costs to defend the criminal charges brought against him.

53.     After their arrest, the Plaintiffs Sean and Rachel Bohnet hired legal counsel, expending approximately $7,700 in attorney fees and costs to defend against the criminal charges brought against them.

54.     The Defendant Elizabeth Warner, as the prosecuting attorney, was responsible for preliminary investigations to establish probable cause and to pursue criminal prosecutions.

55.     As City Attorney, Warner knew the Moscow Mayor issued a health emergency order under his emergency powers under the City Code. Warner also knew that the governing Emergency Health Ordinance explicitly announced exceptions regarding First Amendment protectable rights and of Idaho Statutes § 73-402 expressly preserving the free exercise of religion.

56.     Warner also knew that Moscow citizens have protectable rights under the First Amendment, including the right to assemble, the right to protest, and the right to exercise their religious beliefs among other protectable rights under the U.S. Constitution, the Idaho Constitution, and the laws of the State of Idaho.

57.     Despite her knowledge of the law, Warner failed to investigate the facts related to either Rench's or the Bohnets' arrest and instead concluded that they should be prosecuted.

58.     Three months later, on January 8, 2021, the Moscow City Attorney petitioned the court to Dismiss Charges against Plaintiff Rench. The City Attorney specifically stated that the Mayor's "Emergency Order 20-03 does not specifically address 'speech, press, assembly and/or religious activities…'" but characterized it as a "technicality."

59.     On January 8, 2021, the Moscow City Attorney petitioned the court to Dismiss Charges against the Plaintiffs Sean and Rachel Bohnet. The City Attorney specifically stated that the Mayor's "Emergency Order 20-03 does not specifically address 'speech, press, assembly and/or religious activities…'" but characterized it as a "technicality."

60.     Abridging protected constitutional rights is not a "technicality."

61.     Abridging state statutes protecting religion is not a "technicality."

62.     After the dismissals of the criminal charges of both Rench and the Bohnets, the Moscow City Council would amend the Public Health Emergency Ordinance to remove the exceptions protecting core political speech activities protected under the U.S. and Idaho Constitutions. It did not exclude Idaho Statutes § 73-402 governing the protection of the free exercise of religion.

## COUNT I

### First Amendment Right to Free Speech

63.     The Plaintiffs Gabriel Rench, Sean Bohnet, and Rachel Bohnet incorporate all previous paragraphs as if fully restated to support the underlying claim of First Amendment right to free speech.

64.     The First Amendment protects the right of free speech. U.S. Const. amend. I.

65.     Moscow Ordinance 1-11-07 specifically excluded from any Public Health Emergency Order duly enacted by the Mayor "any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity."

66.     On July 1, 2020, the Moscow Mayor issued and amended Public Health Emergency Order.

67.     The City's September amended Public Health Emergency Order did not specifically prohibit any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.

68.     City officials, including the Mayor, City Attorney, the Moscow Police Chief, and Moscow Police Officers knew the city's ordinance 1-11-07 specifically excluded from any Public Health Emergency Order duly enacted by the Mayor "any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity."

69.     City officials, including the Mayor, City Attorney, the Moscow Police Chief, and Moscow Police Officers knew that the amended Public Health Emergency Order did not specifically prohibit any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.

70.     The First Amendment protects core political activities.

71.     Peaceful protests are core political activities.

72.     Rench and the Bohnets participated in the peaceful protest held at the Moscow City Hall on September 23, 2020 against the Mayor's July 2020 Amended Public Health Emergency Order.

73.     Rench and the Bohnets attended the religious assembly to sing psalms and to protest the July Order's mandate to wear masks and to social distance.

74.     Rench and the Bohnets did not wear masks or social distance at the religious assembly as a means to protest the July Amended Public Health Emergency Order.

75.     While at the religious assembly at the Moscow City Hall on September 23, 2020, and protesting the July Amended Public Health Emergency Order, Rench and the Bohnets were arrested and detained.

76.     Moscow Police Officers, Brown, Lee, and Krasselt, arrested Rench and the Bohnets knowing that they were exercising their protected rights to attend a religious assembly and to protest under the U.S. Constitution, state law, governing city ordinances, and the Mayor's Emergency Health Order.

77. The basis for their arrests was because they neither wore a mask nor socially distanced.

78. Rench and the Bohnets were arrested and detained even though Moscow Ordinance § 1-11-07 exempted "any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity."

79. The arrests involved a reckless indifference to the federally protected rights of Rench and the Bohnets as identified and further protected under the Moscow Ordinance § 1-11-07.

80. Meanwhile, Elizabeth Warner as the prosecuting attorney for the City of Moscow failed to do preliminary investigations to establish probable cause and to pursue criminal prosecutions. As City Attorney, Warner knew the Moscow Mayor issued a health emergency order under his emergency powers under the City Code. Warner also knew that the governing Emergency Health Ordinance explicitly announced exceptions regarding First Amendment protectable rights and of Idaho Statutes § 73-402 expressly preserving the free exercise of religion.

81. Warner also knew that Moscow citizens have protectable rights under the First Amendment, including the right to assemble, the right to protest, and the right to exercise their religious beliefs among other protectable rights under the U.S. Constitution, the Idaho Constitution, and the laws of the State of Idaho.

82. Yet, Warner allowed the criminal prosecutions to proceed for three months before filing motions to dismiss with the Idaho district court for the County of Latah.

83.     As a result of their arrest, Rench and the Bohnets expended moneys for counsel in preparation for their criminal prosecution.

84.     Where a party's constitutional rights have been violated, an award of at least nominal damages is mandatory.

85.     As a result of their arrests, Rench and the Bohnets are entitled to recover compensatory damages because they were denied their constitutional right to free speech.

86.     Punitive damages are also available as a result of the reckless conduct of city officials through the arrest of Rench and the Bohnets for denying their protected right of free speech.

87.     Rench and the Bohnets are also entitled to all attorney fees, costs, and expenses as allowed under this 42 U.S.C. § 1983 action as applicable under § 1988 and all other relief this Court deems just.

## COUNT II

### First Amendment Right of Expressive Association

88.     The Plaintiffs Gabriel Rench, Sean Bohnet, and Rachael Bohnet incorporate all previous paragraphs as if fully restated to support the underlying claim of First Amendment right to expressive association.

89.     The First Amendment guarantees that "Congress shall make no law…abridging the right of the people to peaceably assemble." U.S. Const. Amend. I.

90.     Moscow Ordinance 1-11-07 specifically excluded from any Public Health Emergency Order duly enacted by the Mayor "any and all expressive and association activity

that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity."

91.     On July 1, 2020, the Moscow Mayor issued and amended Public Health Emergency Order.

92.     The City's September amended Public Health Emergency Order did not specifically prohibit any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.

93.     City officials, including the Mayor, City Attorney, the Moscow Police Chief, and Moscow Police Officers knew the city's ordinance 1-11-07 specifically excluded from any Public Health Emergency Order duly enacted by the Mayor "any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity."

94.     City officials, including the Mayor, City Attorney, the Moscow Police Chief, and Moscow Police Officers knew that the amended Public Health Emergency Order did not specifically prohibit any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.

95.     The First Amendment protects core political activities.

96.     Expressive association is a core political activity.

97.     Rench and the Bohnets participated in the peaceful protest with other like-minded individuals held at the Moscow City Hall on September 23, 2020 against the Mayor's July 2020 Amended Public Health Emergency Order.

98.     Rench and the Bohnets attended the religious assembly to sing psalms and to protest with other like-minded individuals the July Order's mandate to wear masks and to social distance.

99.     Rench and the Bohnets did not wear masks or social distance at the religious assembly as a means to protest the July Amended Public Health Emergency Order. They associated with others who also did not wear masks or socially distance as a means of expression against the July Amended Public Health Emergency Order.

100.    While at the religious assembly at the Moscow City Hall on September 28, 2020, and protesting the July Amended Public Health Emergency Order, Rench and the Bohnets were arrested and detained.

101.    The basis for their arrests was because they neither wore a mask nor socially distanced.

102.    Rench and the Bohnets were arrested and detained even though Moscow Ordinance § 1-11-07 exempted "any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity."

103.    The arrests involved a reckless indifference to the federally protected rights of Rench and the Bohnets as identified and further protected under the Moscow Ordinance § 1-11-07.

104.    Meanwhile, Elizabeth Warner as the prosecuting attorney for the City of Moscow failed to do preliminary investigations to establish probable cause and to pursue criminal prosecutions. As City Attorney, Warner knew the Moscow Mayor issued a health emergency order under his emergency powers under the City Code. Warner also knew that the governing Emergency Health Ordinance explicitly announced exceptions regarding First Amendment protectable rights and of Idaho Statutes § 73-402 expressly preserving the free exercise of religion.

105.    Warner also knew that Moscow citizens have protectable rights under the First Amendment, including the right to assemble, the right to protest, and the right to exercise their religious beliefs among other protectable rights under the U.S. Constitution, the Idaho Constitution, and the laws of the State of Idaho.

106.    Yet, Warner allowed the criminal prosecutions to proceed for three months before filing motions to dismiss with the Idaho district court for the County of Latah.

107.    As a result of their arrest, Rench and the Bohnets expended moneys for counsel in preparation for their criminal prosecution.

108.    Where a party's constitutional rights have been violated, an award of nominal damages is mandatory.

109.    As a result of their arrests, Rench and the Bohnets are entitled to recover compensatory damages because they were denied their constitutional right of expressive association.

110.    Punitive damages are also available as a result of the reckless conduct of city officials through the arrest of Rench and the Bohnets for denying their protected right of expressive association.

111.    Rench and the Bohnets are also entitled to all attorney fees, costs, and expenses as allowed under this 42 U.S.C. § 1983 action as applicable under § 1988 and all other relief this Court deems just.

## COUNT III

**First Amendment Right to Petition the Government for the Redress of Grievances**

112.    The Plaintiffs Gabriel Rench, Sean Bohnet, and Rachel Bohnet incorporate all previous paragraphs as if fully restated to support the underlying claim of First Amendment right to petition the government for the redress of grievances to influence public policy.

113.    The First Amendment guarantees each individual the right to associate for expressive purposes, including the right to associate for purposes of petitioning the government and influencing public policy. U.S. Const. Amend. I.

114.    Moscow Ordinance 1-11-07 specifically excluded from any Public Health Emergency Order duly enacted by the Mayor "any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity."

115.    On July 1, 2020, the Moscow Mayor issued and amended Public Health Emergency Order.

116.    The City's September amended Public Health Emergency Order did not specifically prohibit any and all expressive and associative activity that is protected by the

United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.

117.    City officials, including the Mayor, City Attorney, the Moscow Police Chief, and Moscow Police Officers knew the city's ordinance 1-11-07 specifically excluded from any Public Health Emergency Order duly enacted by the Mayor "any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity."

118.    City officials, including the Mayor, City Attorney, the Moscow Police Chief, and Moscow Police Officers knew that the amended Public Health Emergency Order did not specifically prohibit any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.

119.    The First Amendment protects core political activities.

120.    Petitioning the government for the redress of grievances to influence public policy is a core political activity.

121.    Rench and the Bohnets participated in the peaceful protest with other like-minded individuals held at the Moscow City Hall on September 23, 2020 against the Mayor's July 2020 Amended Public Health Emergency Order.

122.    Rench and the Bohnets attended the religious assembly to sing psalms and to protest with other like-minded individuals to voice their grievances to the government and to influence public policy regarding the July Order's mandate to wear masks and to social distance.

123.    Rench and the Bohnets did not wear masks or social distance at the religious assembly as a means to protest the July Amended Public Health Emergency Order. They associated with others who also did not wear masks or socially distance as a means to voice their grievances to the government and to influence public policy against the July Amended Public Health Emergency Order.

124.    While at the religious assembly at the Moscow City Hall on September 23, 2020, and protesting the July Amended Public Health Emergency Order, Rench and the Bohnets were arrested and detained.

125.    The basis for their arrests was because Rench and the Bohnets neither wore a mask nor socially distanced.

126.    Rench and the Bohnets were arrested and detained even though Moscow Ordinance § 1-11-07 exempted "any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity."

127.    The arrests involved a reckless indifference to the federally protected rights of Rench and the Bohnets as identified and further protected under the Moscow Ordinance § 1-11-07.

128.    Meanwhile, Elizabeth Warner as the prosecuting attorney for the City of Moscow failed to do preliminary investigations to establish probable cause and to pursue criminal prosecutions. As City Attorney, Warner knew the Moscow Mayor issued a health emergency order under his emergency powers under the City Code. Warner also knew that the governing Emergency Health Ordinance explicitly announced exceptions regarding First

Amendment protectable rights and of Idaho Statutes § 73-402 expressly preserving the free exercise of religion.

129.    Warner also knew that Moscow citizens have protectable rights under the First Amendment, including the right to assemble, the right to protest, and the right to exercise their religious beliefs among other protectable rights under the U.S. Constitution, the Idaho Constitution, and the laws of the State of Idaho.

130.    Yet, Warner allowed the criminal prosecutions to proceed for three months before filing motions to dismiss with the Idaho district court for the County of Latah.

131.    As a result of their arrest, Rench and the Bohnets expended moneys for counsel in preparation for their criminal prosecution.

132.    Where a party's constitutional rights have been violated, an award of nominal damages is mandatory.

133.    As a result of their arrests, Rench and the Bohnets are entitled to recover compensatory damages because they were denied their constitutional right to petition the government for the redress of grievances to influence public policy.

134.    Punitive damages are also available as a result of the reckless conduct of city officials through the arrest of Rench and the Bohnets for denying their protected right to petition the government for the redress of grievances to influence public policy.

135.    Rench and the Bohnets are also entitled to all attorney fees, costs, and expenses as allowed under this 42 U.S.C. § 1983 action as applicable under § 1988 and all other relief this Court deems just.

## COUNT IV

**The First Amendment Protects the Free Exercise of Religion Which is also Codified Under Idaho Statutory Law**

136.    The Plaintiffs Gabriel Rench, Sean Bohnet, and Rachel Bohnet incorporate all previous paragraphs as if fully restated to support the underlying claim of First Amendment right to the free exercise of religion.

137.    The First Amendment guarantees that "Congress shall make no law…abridging the right of the people to peaceably assemble." U.S. Const. Amend. I.

138.    The First Amendment guarantees each individual the right to associate for expressive purposes, including the right to associate for purposes of petitioning the government and influencing public policy. U.S. Const. Amend. I.

139.    The free exercise of religion is a fundament right under the First Amendment. U.S. Const. Amend. I.

140.    The free exercise is also statutorily protected under Idaho Statute § 73-402:

    (1)   Free exercise of religion is a fundamental right that applies in this state, even if laws, rules or other government actions are facially neutral.

    (2)   Except as provided in subsection (3) of this section, government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability.

    (3)   Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person is both:

        (a) Essential to further a compelling governmental interest;
        (b) The least restrictive means of furthering that compelling governmental interest.

141.    Moscow Ordinance 1-11-07 specifically excluded from any Public Health Emergency Order duly enacted by the Mayor "any and all expressive and associative activity

that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity."

142.    On July 1, 2020, the Moscow Mayor issued and amended Public Health Emergency Order.

143.    The City's September amended Public Health Emergency Order did not specifically prohibit any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.

144.    City officials, including the Mayor, City Attorney, the Moscow Police Chief, and Moscow Police Officers knew the city's ordinance 1-11-07 specifically excluded from any Public Health Emergency Order duly enacted by the Mayor "any and all expressive and association activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity."

145.    City officials, including the Mayor, City Attorney, the Moscow Police Chief, and Moscow Police Officers knew that the amended Public Health Emergency Order did not specifically prohibit any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.

146.    The First Amendment protects the exercise of religion.

147.    State statutory law expressly protects the free exercise of religion.

148.    Rench and the Bohnets participated in the peaceful religious assembly to sing psalms in protest led by their Pastor Douglas Wilson of the Christ Church held at the

Moscow City Hall on September 23, 2020 against the Mayor's July 2020 Amended Public Health Emergency Order.

149.    Rench and the Bohnets attended the religious assembly led by their Pastor Douglas Wilson of the Christ Church to sing psalms and to protest with other like-minded individuals to voice their grievances to the government and to influence public policy regarding the July Order's mandate to wear masks and to social distance.

150.    Rench and the Bohnets did not wear masks or social distance at the religious assembly as a means to protest the July Amended Public Health Emergency Order. They associated with others who also did not wear masks or socially distance as a means to voice their grievances to the government and to influence public policy against the July Amended Public Health Emergency Order.

151.    While at the Christ Church religious assembly at the Moscow City Hall on September 28, 2020, and protesting the July Amended Public Health Emergency Order, Rench and the Bohnets were arrested and detained.

152.    Rench and the Bohnets were arrested and detained even though Moscow Ordinance § 1-11-07 exempted "any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity."

153.    Rench and the Bohnets were arrested and detained even though the right to freely exercise religion is protected under Idaho statutory law under § 73-402.

154.    The basis for their arrests was because they neither wore a mask nor socially distanced.

155.    The arrests and detention were an unnecessary substantial burden on the Plaintiff's constitutionally-protected free exercise of religion.

156.    The arrests involved a reckless indifference to the constitutionally protected rights of Rench and the Bohnets as identified and further protected under the Moscow Ordinance § 1-11-07 and Idaho Statute § 73-402.

157.    Meanwhile, Elizabeth Warner as the prosecuting attorney for the City of Moscow failed to do preliminary investigations to establish probable cause and to pursue criminal prosecutions. As City Attorney, Warner knew the Moscow Mayor issued a health emergency order under his emergency powers under the City Code. Warner also knew that the governing Emergency Health Ordinance explicitly announced exceptions regarding First Amendment protectable rights and of Idaho Statute § 73-402 expressly preserving the free exercise of religion.

158.    Warner also knew that Moscow citizens have protectable rights under the First Amendment, including the right to assemble, the right to protest, and the right to exercise their religious beliefs among other protectable rights under the U.S. Constitution, the Idaho Constitution, and the laws of the State of Idaho.

159.    Yet, Warner allowed the criminal prosecutions to proceed for three months before filing motions to dismiss with the Idaho district court for the County of Latah.

160.    As a result of their arrest, Rench and the Bohnets expended moneys for counsel in preparation for their criminal prosecution.

161.    Where a party's constitutional rights have been violated, an award of nominal damages is mandatory.

162.     As a result of their arrests, Rench and the Bohnets are entitled to recover compensatory damages because they were denied their constitutional right to freely exercise their religious beliefs.

163.     Punitive damages are also available as a result of the reckless conduct of city officials through the arrest of Rench and the Bohnets for denying their protected right to freely exercise their religious beliefs.

164.     Rench and the Bohnets are also entitled to all attorney fees, costs, and expenses as allowed under this 42 U.S.C. § 1983 action as applicable under § 1988 and all other relief this Court deems just.

## COUNT V

### Idaho Code § 18-703 is Violative of the First and Fourth Amendments

**The government cannot compel a person to identify themselves when engaged in protected core political activities and religious assemblies when there is no reasonable suspicion or probable cause of a crime being committed.**

165.     The Plaintiffs Sean Bohnet and Rachel Bohnet incorporate all previous paragraphs as if fully restated to support the underlying claim under the First and Fourth Amendments.

166.     The First Amendment protects a person's right to free speech. U.S. Const. amend. I.

167.     Participating in core political activities are protections afforded under the First Amendment.

168.     The First Amendment guarantees that "Congress shall make no law… abridging the right of the people to peaceably assemble." U.S. Const. Amend. I.

169.    The First Amendment also protects a person's right to petition the

government for the redress of grievances and to influence public policy.

170.    The free exercise of religion is a fundament right under the First Amendment.

U.S. Const. Amend. I.

171.    The free exercise is also statutorily protected under Idaho Statute § 73-402:

(4)    Free exercise of religion is a fundamental right that applies in this state, even if laws, rules or other government actions are facially neutral.

(5)    Except as provided in subsection (3) of this section, government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability.

(6)    Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person is both:

(a) Essential to further a compelling governmental interest;

(b) The least restrictive means of furthering that compelling governmental interest.

172.    The Fourth Amendment protects a person's right against unreasonable search

and seizure.  U.S. Const. amend. IV.

173.    Together, the First and Fourth Amendments create a right to anonymous

participation in First Amendment protected activities unless there is a reasonable suspicion

or probable cause to believe a crime has occurred.

174.    Under Section 1-11-07 of the Moscow City Code, the provision listed

activities *excluded* from any public health emergency order:

*Unless otherwise specifically prohibited* by a Public Health Emergency Order duly enacted by the Mayor, the following activities shall be exempt from the scope of such order:

1. *Any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.* (Emphasis added).

175.    The issued City of Moscow Amended Emergency Order did not specifically exclude activities identified under § 1-11-07, subdivision 1.

176.    Moscow public officials and law enforcement knew that the issued City of Moscow Amended Emergency Order did not specifically exclude activities identified under § 1-11-07, subdivision 1.

177.    On September 23, 2020, the Bohnets attended and participated in a peaceful religious assembly in protest against the City of Moscow's Amended Public Health Emergency Order.

178.    The religious assembly singing Psalms was a legal activity.

179.    The Bohnets participated in the religious assembly to sing Psalms.

180.    The political protest against Moscow's Emergency Order was a legal protest.

181.    The political protest was peaceful and orderly.

182.    The Bohnets participated in the protest and were peaceful and orderly.

183.    The Bohnets did not cause any disruption.

184.    The Bohnets did not engage in any fights with any other person attending the protest.

185.    The Bohnets did not sell illegal drugs or purchase illegal drugs or any other kind of drug.

186.    The Bohnets did not threaten any other person.

36

187.    The Bohnets did not engage in any other illegal activity while attending the religious assembly and protest.

188.    The Bohnets were also aware that under Section 1-11-07 of the Moscow City Code, the provision listed activities excluded from any public health emergency order:

*Unless otherwise specifically prohibited* by a Public Health Emergency Order duly enacted by the Mayor, the following activities shall be exempt from the scope of such order:

1.  *Any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.* (Emphasis added).

189.    The Bohnets knew of the Amended Emergency Order did not specifically exclude the provisions listed under § 1-11-07.

190.    While at the Christ Church religious assembly at the Moscow City Hall on September 23, 2020, and protesting the Amended Public Health Emergency Order, the Bohnets were arrested and detained.

191.    Rachel Bohnet was arrested for "resisting and obstructing officers" pursuant to Idaho Code § 18-705 because the arresting officer alleged that she refused to identify herself.

192.    Sean Bohnet was arrested for "resisting and obstructing officers" pursuant to Idaho Code § 18-705 because the arresting officer alleged that he refused to identify himself.

193.    The arresting officers knew there was no reasonable suspicion or probable cause that the Bohnets were or had committed a crime.

194.    Under Idaho state law, a person obstructs an officer when that person "resists, delays, or obstructs any public officer, in the discharge, or attempt to discharge, of any duty of his office." Idaho Code § 18-705.

195.    The government may not compel a person to identify himself or herself when engaged in protected core political activities and religious assemblies when there is no reasonable suspicion or probable cause of a crime being committed.

196.    Idaho Code § 18-705 is unconstitutional as to anonymous participation in First Amendment protected activities because it is not narrowly tailored to meet a compelling state interest.

197.    This unconstitutional aspect of Idaho Code § 18-705 is non-severable rendering the whole of § 18-705 unconstitutional.

198.    Idaho Code § 18-705 is without a written exception for anonymous participation in First Amendment protected activities.

199.    The Bohnets were arrested and detained even though Moscow Ordinance § 1-11-07 exempted "any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity."

200.    The Bohnets were arrested and detained even though Moscow Ordinance § 1-11-07 exempted "any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity."

201.    The Bohnets were arrested and detained even though the right to freely exercise religion is protected under Idaho statutory law under § 73-402.

202.    An arrest is unlawful unless there is probable cause to support the arrest.

203.    The arrests involved a reckless indifference to the federally protected rights of the Bohnets to anonymous First Amendment participation as identified and further protected under the Moscow Ordinance § 1-11-07, and Idaho Statute § 73-402.

204.    Meanwhile, Elizabeth Warner as the prosecuting attorney for the City of Moscow failed to do preliminary investigations to establish probable cause and to pursue criminal prosecutions. As City Attorney, Warner knew the Moscow Mayor issued a health emergency order under his emergency powers under the City Code. Warner also knew that the governing Amended Emergency Health Ordinance did not specifically exclude the provisions listed under § 1-11-07.

205.    Section 1-11-07 of the Moscow City Code listed activities *excluded* from any public health emergency order:

> *Unless otherwise specifically prohibited* by a Public Health Emergency Order duly enacted by the Mayor, the following activities shall be exempt from the scope of such order:
>
>> 1. *Any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.* (Emphasis added).

206.    The provision referencing religious activity means it did not explicitly announce exceptions regarding First Amendment protectable rights and of Idaho Statute § 73-402 expressly preserving the free exercise of religion.

207.    Warner also knew that Moscow citizens have protectable rights under the First Amendment, including the right to anonymously assemble, the right to anonymously protest, and the right to anonymously exercise their religious beliefs among other protectable rights under the U.S. Constitution, the Idaho Constitution, and the laws of the State of Idaho.

208.    Yet, Warner allowed the criminal prosecutions to proceed for three months before filing motions to dismiss with the Idaho district court for the County of Latah.

209.    As a result of their arrest, the Bohnets expended moneys for counsel in preparation for their criminal prosecution. Likewise, Gary Riedner, Mia Bautista, Chief James Fry, Police Officer Will Krasselt, Police Officer Carlee Brown, and Police Officer Jake Lee failed to do preliminary investigations to establish probable cause and to pursue criminal prosecutions. As City officials and officials charged with the enforcement of the law, they knew the Moscow Mayor issued a Health Emergency Order under his emergency powers under the City Code. They also knew that the governing Amended Emergency Health Ordinance did not specifically exclude the provisions listed under § 1-11-07.

210.    Section 1-11-07 of the Moscow City Code, the provision listed expressive and associative activities *excluded* from any public health emergency order:

> *Unless otherwise specifically prohibited* by a Public Health Emergency Order duly enacted by the Mayor, the following activities shall be exempt from the scope of such order:
>
> > 1. *Any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.* (Emphasis added).

211.    This provision referencing religious activity means it did not explicitly announce exceptions regarding First Amendment protectable rights and regarding Idaho Statute § 73-402 which expressly preserves the free exercise of religion.

212.    Where a party's constitutional rights have been violated, an award of nominal damages is mandatory.

213.    As a result of their arrests, the Bohnets are entitled to recover compensatory damages because they were denied their constitutional rights to anonymously participate in First Amendment-protected activities.

214.    Punitive damages are also available as a result of the reckless conduct of city officials through the arrest of the Bohnets for denying their protected right to anonymous participation in First Amendment-protected activities.

215.    Rench and the Bohnets are also entitled to all attorney fees, costs, and expenses as allowed under this 42 U.S.C. § 1983 action as applicable under § 1988 and all other relief this Court deems just.

### Jury Demanded

216.    The Plaintiffs Rench and the Bohnets demand a jury trial.

### Prayer for Relief

Therefore, the Plaintiffs Gabriel Rench, Sean Bohnet, and Rachel Bohnet respectfully ask that this Court:

1.    To declare that their First Amendment right to free speech was violated;

2.    To declare that their First Amendment right to expressive association was violated;

3.    To declare that their First Amendment right to petition the government for the redress of grievances was violated;

4.    To declare that their First Amendment right to exercise religion was violated;

5.    To declare that their right to exercise religion under Idaho Statute § 73-402 was violated;

41

6.      To declare that Sean Bohnet's and Rachel Bohnet's right not to identify themselves when exercising their First Amendment rights was violated under the First and Fourth Amendments;

7.      To declare that Idaho Code § 18-705 is unconstitutional as to anonymous participation in First Amendment-protected activities because it is not narrowly tailored to meet a compelling state interest;

8.      Award the Plaintiffs nominal, compensatory, general and special damages for all violations under the First Amendment;

9.      Award the Plaintiffs Sean Bohnet and Rachel Bohnet nominal, compensatory, general and special damages for the violations they suffered under the Fourth Amendment;

10.     Award the Plaintiffs punitive damages under § 1983 for the reckless indifference of violating their protected First Amendment rights;

11.     Award the Plaintiffs Sean Bohnet and Rachel Bohnet punitive damages for the violation they suffered under the Fourth Amendment;

12.     Award the plaintiffs attorneys' fees, costs, and expenses allowed under 42 U.S.C. § 1988;

13.     Award the Plaintiffs damages and all costs, expenses, and expert witness fees allowed by law; and Award the plaintiffs such other and further relief as this Court deems just.

Dated: <u>March 24, 2021</u>

Michael Jacques, 7369
Jacques Law Office, P.C.
2021 Cleveland Blvd
Caldwell, ID 83605
Phone: 208.344.2224
Fax: 208.287.4300


Erick G. Kaardal, 229647*
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, MN 55402
Telephone:     (612) 341-1074
Facsimile:     (612) 341-1076
Email:           kaardal@mklaw.com
*Attorneys for the Plaintiffs*

*Motion for Pro Hac Vice Admission
forthcoming