UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| GABRIEL RENCH, et al., | Case No.: 3:21-cv-00138-MCE |
|---|---|
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| CITY OF MOSCOW, et al., | |
| Defendants. | |

Plaintiffs Gabriel Rench, Sean Bohnet, and Rachel Bohnet (collectively, "Plaintiffs") initiated this action against Defendants City of Moscow ("City"), a political subdivision of the State of Idaho; Gary Riedner, the City supervisor; Mia Bautista and Elizabeth Warner, both City attorneys; James Fry, the Chief of Police; and Will Krasselt, Megan Vincello, and Jake Lee, all City police officers, (collectively, "Defendants") for constitutional injuries purportedly sustained when Plaintiffs participated in a September 2020 protest and religious gathering.  Presently before the Court is Defendants' Motion for Summary Judgment.  Dkt. No. 32.  For the following reasons, Defendants' Motion is DENIED.

///

///

///

# BACKGROUND[1]

On March 20, 2020, during the initial stages of the COVID-19 pandemic, the Moscow City Council approved an "Emergency Powers Ordinance," (hereafter "Ordinance") granting the mayor the authority to enact emergency public health orders to combat the spread of the virus. That Ordinance, however, specifically excluded the following:

> Unless otherwise specifically prohibited by a Public Health Emergency Order duly enacted by the Mayor, the following activities shall be exempt from the scope of such order: 1. Any and all expressive and associative activity that is protected by the United States and Idaho Constitutions, including speech, press, assembly, and/or religious activity.

Moscow City Code § 1-11-07. On July 1, 2020, pursuant to the Ordinance, the mayor enacted Amended Public Health Emergency Order No. 20-03 (the "Order"). The Order provided, in pertinent part, that "[e]very person in the city of Moscow" must either: (1) "wear a face covering that covers their nose and mouth when in any indoor or outdoor public setting where the 6-foot physical distancing is not able to be maintained with non-household members"; or (2) "when in places that are open to the public, shall maintain 6-foot physical distancing from a non-household member, whenever possible."[2] Violation of the Order was a misdemeanor. When the Order was enacted, the City believed that it applied to religious or expressive activities or, more generally, to every person in the City engaged in all activities in a public setting. Somehow, every single City official involved overlooked the exclusionary language included in the Ordinance

---

[1] The material facts are undisputed and are taken, primarily verbatim, from the parties' briefs. The Court is aware that in their opposition, Plaintiffs have attempted to identify factual disputes sufficient to preclude entry of judgment, but those disputes are illusory or immaterial. That said, it does not necessarily follow from an undisputed factual record that a moving party is entitled to judgment. That party still must meet its burden of showing that those facts and the law are in its favor. Although the Court cannot remember another case in all of its years on the bench where a moving party established that the material facts were undisputed, but still did not meet its burden of showing it was entitled to judgment, this case shows, as the adage goes, that there is a first time for everything.

[2] The Order also included a few additional exceptions not relevant here.

1 requiring that the mayor make explicit that the Order was intended apply to all
2 constitutionally protected expressive and associative activity as well.
3     Accordingly, when City officials were made aware in September 2020 that a local
4 church was planning a protest against the Order and a "psalm sing" to be held outside in
5 the parking lot of City Hall, they began preparations to enforce the Order itself.  In
6 anticipation of the event, the City had dots painted six feet apart in that parking lot so
7 attendees could ensure they were properly distanced if they chose not to wear masks.
8 Law enforcement officers were also instructed to exercise their discretion in enforcing
9 the Order should they observe any violations as well as how to properly write and issue
10 citations.
11     The day of the event arrived, and all three Plaintiffs participated in the protest.
12 They declined to wear masks or physically distance themselves from attendees who
13 were not members of the same household.  They also refused (at least initially) to
14 provide identification to officers.  All three Plaintiffs were peacefully arrested and cited for
15 violating the Order.  Based on their refusal to identify themselves, the Bohnets were also
16 cited for resisting or obstructing an officer in violation of Idaho Code § 18-705.
17     A local magistrate judge subsequently determined probable cause supported the
18 arrests and citations after being provided probable cause affidavits that referenced only
19 the Order and not the Ordinance, and Defendant Warner opted to proceed with Plaintiffs'
20 prosecution.  Plaintiffs thereafter moved to dismiss all charges on the basis that their
21 conduct was excluded from the reach of the Order in light of the exclusions set forth in
22 the Ordinance.  In response, the City itself moved to dismiss the criminal charges, and
23 the state court granted said motion, but not before Plaintiffs had incurred several
24 thousand dollars in legal defense fees.  The City has since repealed the Ordinance
25 section setting forth the applicable exclusions and terminated the Order as well.
26     In the meantime, Plaintiffs initiated this action setting forth claims for violation of
27 their First Amendment rights to free speech, expressive association, petition the
28 Government, and free exercise of religion, which are also purportedly protected under

Idaho state law.  Plaintiffs also contend that Idaho Code § 18-705 is unconstitutional under the First and Fourteenth Amendments as applied to their specific circumstances. Defendants have now moved for summary judgment in their favor on the basis that:  (1) any claim regarding the constitutionality of state law should be directed to the State of Idaho as opposed to Defendants; (2) declaratory and injunctive relief claims are moot because the Order has been terminated; (3) no constitutional violation occurred in any event; (4) Plaintiffs' false arrest and malicious prosecution claims fail given the independent findings of probable cause; and (5) the arresting officers are entitled to qualified immunity.  The Court has considered all of these arguments.

## STANDARD

The Federal Rule of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. 587.

## ANALYSIS

Defendants' Motion turns primarily on the underlying premise that the Ordinance and Order were ambiguous as to whether they reached Plaintiffs' conduct. It follows, according to Defendants, that a substantive First Amendment analysis is warranted and should be resolved in their favor. That is simply incorrect. The City's Code could not be more clear: Under a plain reading of the Order in conjunction with the Ordinance, all expressive activity was excluded from the mask or distance mandate because such

conduct was not explicitly addressed in the Order itself.  In other words, during the relevant time period, those participating in expressive or associative conduct were not required to mask or distance.  Plaintiffs should never have been arrested in the first place, and the constitutionality of what the City thought it's Code said is irrelevant.  Absent violation of the Order or any other law, it is also unclear what justification existed for requiring Plaintiffs to identify themselves or for charging them with obstruction.  All of the foregoing present problems for the City.  So does the fact that the magistrate judge's probable cause finding was based on incomplete information, namely that the magistrate judge was not provided any reference to the Ordinance and instead only the Order was cited as a basis for Plaintiffs' arrests.  The prosecutors' charging decisions were likewise flawed.

That said, Plaintiffs' claims are not without their own issues.  For example, the Court fails to see how the individual officers can be held liable for constitutional violations when they were explicitly briefed by the experts on the applicable laws and were advised that the Order should be enforced at Plaintiffs' event.  Since the Order is no longer in effect in any form, and because Plaintiffs should not have been arrested in the first place, it is also questionable whether Plaintiffs can show any entitlement to declaratory or injunctive relief.

Regardless, and in any event, given that Defendants' Motion rests almost entirely on the flawed legal theory that the Ordinance and Order could be construed to encompass Plaintiffs' conduct, the Court declines to consider the arguments set forth therein, and the Motion is DENIED without prejudice.  Prior to the re-filing of any Motion, however, this Court is ordering the parties to participate in a settlement conference.  The Court typically prefers to let the parties dictate the path of their own litigation, but this is one of the most novel set of circumstances the Court has ever encountered.  Given that Plaintiffs were wrongfully arrested, the City indisputably erred in interpreting its own Code, the City consequently misadvised its officers as to the Code's application, and Plaintiffs are so far reasonable in their damages requests, this case should not need to

see the inside of a courtroom.  It would behoove everyone involved to take a step back from their respective positions and prepare to negotiate in good faith.

## CONCLUSION

Accordingly, for the foregoing reasons, Defendants' Motion for Summary Judgment (Dkt. No. 32) is DENIED without prejudice.  This matter is referred to the District's ADR Coordinator, who will schedule a Settlement Conference with an available magistrate judge.  This Court is also available and willing to preside over the settlement conference via Zoom if the parties so request.  Counsel are instructed to have a principal with full settlement authority present at the conference or to be fully authorized to settle the matter on any terms.  The parties are ordered to file a joint status report ("JSR") not later than seven (7) days after the conclusion of that conference.  If the case does not settle, the Court will entertain renewed motions for summary judgment filed not later than thirty (30) days following the date the JSR is electronically filed.  Any such motions shall treat this Court's finding that the Order and Ordinance are unambiguous and did not apply to Plaintiffs during the protest and psalm sing as law of the case and rely on that finding accordingly.

IT IS SO ORDERED.

Dated:  February 1, 2023

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE